**Melvin O. SHERMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–99–00005–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Feb. 29, 2000.

Decided March 30, 2000.

John C. Bennett, Texas Dept. of Criminal Justice, State Counsel for Offenders, Huntsville, for appellant.

James H. Elliott, Bowie County Asst. Dist. Atty., Nicole Habersang, Asst. Dist. Atty., Texarkana, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## O P I N I O N

Opinion by Justice GRANT.

Melvin Sherman appeals from his conviction in a jury trial for assault on a public servant. On proof of two prior convictions for enhancement, he was sentenced to thirty years' imprisonment. Sherman contends that the trial court erred by improperly denying his right to cross-examination, by refusing to tender a lesser-included offense to the jury, by permitting improper jury argument, and by improperly admitting evidence of extrinsic conduct.

The evidence shows that Sherman, an inmate, and Officer Jeffrey Lann, a prison guard, exchanged harsh words while Sherman was on his way to breakfast. There is evidence that Sherman did not walk as required by prison regulations and was talking loudly. Lann ordered him to comply, and Sherman instead began cursing Lann and became belligerent. Lann took Sherman back to his cell. Sherman stopped in front of his cell, as required by prison rules. Lann admitted that he did not ask Sherman if the cell was his, but assumed that he was disobeying by not going to his own cell. The two continued to curse at each other, and Sherman hit Lann twice in the face.

Sherman presented evidence that Lann began the cursing match by making fun of his half-finished haircut, and that the officer made obscene remarks referring to Sherman's mother's ancestry and sexual proclivities. Sherman testified that he then made a similar remark about Lann's mother, that Lann hit him, and that he then responded in kind.

Sherman first contends that the trial court committed reversible error by denying his request to cross-examine Lann about a prior disciplinary action against him. The State questioned Officer Lann in direct examination about a situation that had occurred shortly after he was hired by the prison system in which he had observed a supervisor use force on an inmate and had failed to report the use of force as required by the rules. Lann stated that he had been placed on probation for this failure and had not had any disciplinary problems since. The State then continued its questioning about the present offense.

On cross-examination, counsel for Sherman attempted to question Lann about this prior disciplinary action. The trial court refused to permit the questioning, despite the State's prior raising of the issue, reiterating its decision on a pretrial motion in limine. At that time, the court explicitly ruled that counsel could not use the transcript or testimony of Lann about this issue from a previous trial for the same offense and could ask the witness about the failure to report, but could not go into any details during the questioning of the witness.

Sherman made two bills of exceptions. In both bills, Sherman questioned Lann about the details of the event for which he was disciplined, focusing on the fact that Lann's supervisor had been demoted for lying about his use of force against an inmate, and that Lann had intentionally failed to report the actual facts of that case. After the State had introduced the matter, the court permitted counsel to read to the jury a limited part of Lann's prior testimony. Counsel read Lann's prior testimony about the manner in which the present incident occurred, and also read a question asking Lann if any officer had ever reported him for violating the rules of the Texas Department of Criminal Justice, Institutional Division (TDCJ–ID). Lann answered that no officer had ever reported him for such a violation. Counsel then read Lann's later testimony that he had forgotten about being reported for failing to report use of force by his supervisor, which led to Lann's being placed on probation by TDCJ–ID.

## Standard of Review: Right of Confrontation/Right to Cross-examine

 The Sixth Amendment to the United States Constitution guarantees a defendant the right to confront the witnesses against him. U.S. Const. amend. VI; *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). A trial court violates a defendant's right of confrontation if it improperly limits appropriate cross-examination. *Carroll v. State*, 916 S.W.2d 494, 497 (Tex.Crim.App.1996). The Confrontation Clause and cross-examination exist in part to ensure fairness in criminal proceedings. *Offor v. Scott*, 72 F.3d 30, 33–34 (5th Cir.1995). Through cross-examination, a defendant tests the believability of a witness and the truth of his or her testimony. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

 The right to cross-examination extends to any matter that could reflect on the witness's credibility. *Virts v. State*, 739 S.W.2d 25, 28 (Tex.Crim.App.1987).

The right of an accused to cross-examine a testifying State's witness includes the right to impeach the witness with relevant evidence that might reflect bias, interest, prejudice, inconsistent statements, traits of character affecting credibility, or evidence that might go to any impairment or disability affecting the witness's credibility. *Id.* at 29; *Alexander v. State*, 949 S.W.2d 772, 774 (Tex.App.-Dallas 1997, pet. ref'd). Thus, the scope of cross-examination should extend to all facts and circumstances that when tested by human experience, tend to show that a witness may shade his testimony for the purpose of helping to establish only one side of the cause. *Carroll*, 916 S.W.2d at 497–98; *Alexander*, 949 S.W.2d at 774–75.

 However, even though a defendant's right to confrontation and cross-examination is constitutionally safeguarded, the right is not absolute. *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297, 309 (1973); *Huff v. State*, 897 S.W.2d 829, 839 (Tex.App.-Dallas 1995, pet. ref'd). The trial court retains great latitude in imposing reasonable limitations on cross-examination. *Virts*, 739 S.W.2d at 28. The court may properly limit the scope of cross-examination to prevent harassment, prejudice, confusion of the issues, harm to the witness, and repetitive or marginally relevant interrogation. *Carroll*, 916 S.W.2d at 497. When considering whether a trial court's decision to exclude testimony is error, we must determine whether the trial court abused its discretion. *Love v. State*, 861 S.W.2d 899, 903 (Tex.Crim.App.1993). This inquiry depends on the facts of each case. *Id.* at 904; *Roberts v. State*, 963 S.W.2d 894, 901 (Tex.App.-Texarkana 1998, no pet.).

## Application of the Standard

 Sherman contends that he should have been permitted to question Lann about his prior actions because they were probative of a bias in favor of prison officers because Lann had lied in a written

statement to protect a fellow officer. The basic argument is if he lied to protect a fellow officer from this same type of charge, he would likely lie to protect himself. This is the type of evidence that is admissible on cross-examination. *See Virts,* 739 S.W.2d at 28; *Alexander,* 949 S.W.2d at 774–75; *Carroll,* 916 S.W.2d at 497. However, this is not a situation where the court entirely refused to admit any mention of the prior acts from any source. Instead, the court refused to permit counsel to ask any questions of the officer on this issue, apparently rationalizing that the eight lines of questions and answers on this topic provided by the State on direct, combined with the reading of eight lines of questions and answers from cross-examination of the officer in the prior trial, sufficed to provide this information to the jury.

The issue before this Court is whether this decision was within the discretion of the trial court, recognizing that the trial court retains great latitude in imposing reasonable limitations on cross-examination. *Virts,* 739 S.W.2d at 28.

Applying the standard set out above, it is difficult to conclude that the court did not err in its limitation of cross-examination. In the present case, the court actually permitted no live cross-examination, and allowed only a very few lines of testimony from a prior trial to be read before the jury. The testimony offered by the State was not cross-examination and does not come into our analysis. As a result of the trial court's decision, the jury heard only the extremely brief and sanitized version provided by the State of the officer's act, and the trial court permitted the defense to attack that testimony and the credibility of the witness through cross-examination not by live testimony, but only by the reading of less than ten lines of testimony from a previous trial. The rules set out by the cases cited above allow a court to limit cross-examination to prevent harassment, prejudice, confusion of issues, harm to the witness, and repetitive or marginally rele-

vant interrogation. *Carroll,* 916 S.W.2d at 497. In the present case, counsel was denied the right to cross-examine and question the witness's credibility regarding his previous act of lying about an excessive force claim against an officer.

■■■■■ The question arises whether the State opened the door to the cross-examination by questioning Lann. The general idea behind this proposition is that once one party has begun an inquiry into a particular subject, that party cannot complain when the opposing party desires to go into the details of that subject. Evidence used to fully explain a matter introduced by the other party need not ordinarily be admissible. *Long v. State,* 10 S.W.3d 389, 398 (Tex.App.-Texarkana no pet. h.). This is an exception to the general rule that a party is not entitled to impeach a witness on a collateral matter. When a witness leaves a false impression concerning a matter relating to his or her credibility, the opposing party is allowed to correct that false impression. *Ramirez v. State,* 802 S.W.2d 674, 676 (Tex.Crim.App. 1990).

Sherman contends that by not allowing him to question Lann on the stand, as did the State, about the act that had resulted in Lann's probation by the department, the jury may have been left with a false and harmful impression that the only thing Lann had done was to keep silent about the violent action of his supervisor, instead of actually filing a false report in the case.

The court erred by refusing to permit proper examination of the witness in this respect. We recognize that the trial court did allow the defense to introduce testimony from the prior trial—but also that the canned, cold testimony of a prior trial did not clearly reflect the true state of events as shown by the bill of exceptions in which Lann admitted he had filed a false report. Such a limitation is an abuse of discretion.

■■■■■ The next question is whether the error caused harm. Under the cross-examination contention, this is a constitu-

tional error and is reviewed under TEX. R.APP. P. 44.2(a). Thus, we must reverse the conviction unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. The improper refusal to permit the defendant to pursue a line of questioning raised by the State is procedural error and is reviewed under TEX.R.APP. P. 44.2(b), and this court reverses under that section only if the error affected a substantial right of the defendant.

The testimony from the State that went before the jury showed that Lann, as an employee with less than six months' experience, had seen his supervisor use force on an inmate and had failed to report the incident, that Lann was placed on probation for that failure, and served the probation successfully, and that he had not had any additional disciplinary problems.

The testimony from the prior trial presented to the jury was that Lann had testified at the prior trial that he had never been reported for violating the rules of the TDCJ–ID by not reporting a use of force and his later admission that the statement was not the truth—that he had forgotten the incident.

Only in a bill of exceptions did it became clear that Lann did not merely fail to report the incident, but actually fabricated a report in which he falsely stated that the inmate had struck the officer first, and that he had done this to protect that officer's career.

Sherman testified that Lann hit him first. Lann testified that Sherman hit him first. The other two officers testified that Sherman hit Lann first. Other inmates testified to the contrary. The entirety of this prosecution rests on the credibility of the witnesses. The court did not permit the defense to cross-examine Lann to show that he had lied about the same type of incident. This testimony would have the potential to materially affect the jury's decision-making process, because the credibility of the witnesses was critical to any decision in this case. Further, we note

that at a prior trial in which similar cross-examination was permitted, the jury could not reach a verdict and the court deemed it necessary to send a dynamite charge to the jury to encourage a verdict in the present case. In light of all these factors, we cannot conclude beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

In reviewing the procedural "opening of the door" argument, we recognize that under the rule a substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. TEX.R.APP. P. 44.2(b); *King v. State*, 953 S.W.2d 266 (Tex.Crim.App. 1997). If on the record as a whole it appears the error "did not influence the jury, or had but a slight effect," we must consider the error harmless and allow the conviction to stand. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998). On considering the factors set out above, we likewise conclude that the error had more than a slight effect on the trial and thus affected the substantial right of the defendant to a fair trial. These points are sustained.

 Sherman next contends that the trial court erred by refusing to send the jury a charge on the lesser-included offense of assault. He was indicted for and convicted of assault of a peace officer under TEX. PEN.CODE ANN. § 22.01(b)(1) (Vernon Supp.2000). A defendant is entitled to a charge on a lesser offense if (1) the lesser offense is included within the proof necessary to establish the offense charged, and (2) there is some evidence that would permit the jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim.App.1993); *Dowden v. State*, 758 S.W.2d 264, 268 (Tex.Crim.App.1988); *Royster v. State*, 622 S.W.2d 442, 446 (Tex. Crim.App. [Panel Op.] 1981).

 The statute under which Sherman was convicted reads as follows:

(b) An offense under Subsection (a)(1) is a Class A misdemeanor, except that the offense is a felony of the third degree if the offense is committed against:

(1) a person the actor knows is a public servant while the public servant is lawfully discharging an official duty, **or in retaliation or on account of an exercise of official power or performance of an official duty as a public servant;** or ....

TEX. PEN.CODE ANN. § 22.01(b)(1) (Emphasis added.). The indictment only alleged the portion of the statute set forth in bold type. The jury charge, however, also incorporates the first portion of the statute in a definition section. Such a definition is improper in this case, because Sherman was not indicted for that crime.

We emphasize that Sherman was tried only on the second portion of the statute and not under the general language making it an offense to assault a peace officer while he is performing an official duty. Sherman contends that there was evidence that his assault on Lann was not in retaliation or on account of an exercise of official power or performance of an official duty as a public servant, because there was evidence that Lann's acts were outside the performance of his official duties. Specifically, he argues that there was evidence that Lann struck Sherman first, and that when initiating violence against an inmate, Lann was necessarily acting outside the scope of his official duties and outside any proper exercise of official power.

Sherman also argues that Lann was acting outside the scope of his duties or official powers when he did not carry them out as Lann himself testified was appropriate. In particular, Lann testified that he ordered Sherman to go to his cell, and that procedure required Sherman to go to his cell and stop in front of it while waiting for an officer watching from a control room to open the door. The testimony shows that Sherman did so. The officer in the control room testified that he saw Sherman stopped in front of a cell and that he was waiting for Lann to signal him to open the door, but that Lann did not do so. Lann testified that he did not ask Sherman if he was in front of his cell when he stopped, but just assumed that he had not gone to his cell.

Sherman also testified that Lann was cursing at him the entire distance from the breakfast line to his cell. Lann testified that the use of profanity by a guard toward an inmate violates the Texas Department of Corrections (TDC) policy.

Based on these factors, Sherman contends that there is some evidence that Lann was not acting in an official capacity because he was performing his duties in a manner that is not authorized or approved by the TDC or by statutory law.

Even if Lann violated a TDC policy, this does not mean that he was not performing an official duty as a public servant for the purpose of this statute. *See Hughes v. State,* 897 S.W.2d 285 (Tex.Crim.App. 1994); *Guerra v. State,* 771 S.W.2d 453 (Tex.Crim.App.1988); *Montoya v. State,* 744 S.W.2d 15 (Tex.Crim.App.1987). This point of error is overruled.

■ Sherman next contends that the court permitted one of his witnesses to be subjected to improper cross-examination through the use of evidence that did not tend to show bias. We have previously set out the standards to be applied in reviewing the granting or denial of cross-examination. While the trial court did not permit Sherman to cross-examine his accuser, Officer Lann, for bias or credibility, the court did permit the State to cross-examine Sherman's witness, Reginald Cotton, about his own disciplinary reports and hearings to show bias. Applying the reasoning set out under the first point of error, the cross-examination for purposes of attacking the credibility of the witness is proper for showing his bias in favor of fellow prisoners and his bias against the prison authorities. The point of error is overruled.

Because of our disposition of this case on the denial of cross-examination, we do not address the remaining point of error.

For the reasons stated above, the judgment of the trial court is reversed, and the cause is remanded for a new trial.