

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00422-CR

GABRIEL LUNA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 137th District Court
Lubbock County, Texas
Trial Court No. 2011-432,524, Honorable John J. "Trey" McClendon, Presiding

December 10, 2014

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Gabriel Luna, appeals the trial court's judgment by which he was convicted of sexual assault of a child and sentenced to fifty years' confinement.[1]  He contends on appeal that the trial court reversibly erred when it admitted testimony regarding appellant's post-offense incarceration for an unrelated offense.  We will affirm.

---

[1] See TEX. PENAL CODE ANN. § 22.011(a)(2)(A) (West Supp. 2014).

## Factual and Procedural History

Appellant was charged with and convicted of sexually assaulting his daughter, M.L., in 2009, when M.L. was fifteen years old. The State's evidence of appellant's guilt consisted primarily of M.L.'s account of the assault. In an apparent effort to undermine the credibility of M.L.'s testimony regarding the assault, appellant introduced the fact that M.L. continued to write letters to appellant after the alleged assault, suggesting that no assault occurred and the two shared a fairly normal father-daughter relationship. The State sought to make clear to the jury that M.L. wrote to appellant only while appellant was incarcerated such that he could not be around her and she felt safe from him; ostensibly, the State thereby sought to correct the false impression that there remained a natural, bonded father-daughter relationship. The trial court permitted evidence of the letter and, over appellant's objections, also admitted evidence that appellant was incarcerated at the time M.L. wrote the letter at issue. The trial court made clear that the State was not permitted to introduce any evidence of the offense for which appellant was incarcerated at that time. Further, the trial court strictly limited the jury's consideration of the fact that appellant was incarcerated and expressly directed it not to consider that fact as any evidence that appellant was guilty of the instant offense.

Ultimately, the Lubbock County jury found appellant guilty of the charged offense and recommended punishment of fifty years' imprisonment. The trial court imposed sentence accordingly, and appellant timely appealed to this Court, where he now contends in two issues that the trial court erred by admitting evidence that he was incarcerated at the time M.L., the complainant, corresponded with him.

Standard of Review

We review the trial court's decision to exclude or admit evidence for an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990) (en banc) (citing *Marras v. State*, 741 S.W.2d 395, 404 (Tex. Crim. App. 1987) (en banc)). The test for abuse of discretion is a question of whether the trial court acted without reference to any guiding rules and principles. *Id.* at 380. We will uphold the trial court's ruling "so long as the result is not reached in an arbitrary or capricious manner." *Id.* Further, we will sustain the trial court's decision if that decision is correct on any theory of law applicable to the case. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990) (en banc).

Analysis

Appellant challenges the admission of the evidence of his incarceration on two fronts: (1) its relevance and (2) its prejudicial effect versus its probative value. We will address those aspects of the evidence in turn.

Relevance

In his first issue, appellant complains that, by admitting M.L.'s testimony that appellant was incarcerated at the time she sent him the letter at issue, the trial court admitted irrelevant evidence. The State contended below and reasserts on appeal that appellant left a false impression when he cross-examined M.L. about corresponding with appellant, suggesting that M.L. and appellant maintained a normal father-daughter relationship and, in turn, attempting to undermine the credibility of her testimony of the

3

assault. Doing so, the State maintains, opened the door for it to introduce the fact that appellant was incarcerated on a seemingly unrelated matter at the time of the correspondence, correcting any impression otherwise left concerning the relationship between father and daughter.

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401. The parties speak in terms of "opening the door" when addressing the relevance of the evidence that appellant was incarcerated when M.L. wrote him the letter introduced into evidence. The general idea behind the notion of "opening the door" is that "once one party has begun an inquiry into a particular subject, that party cannot complain when the opposing party desires to go into the details of that subject." *Sherman v. State*, 20 S.W.3d 96, 101 (Tex. App.—Texarkana 2000, no pet.). Evidence used to fully explain a matter introduced by the other party need not ordinarily be independently admissible. *See id.*

On cross-examination of M.L., appellant's counsel questioned her about any correspondence she had maintained with appellant and ultimately presented evidence of a letter M.L. had written and sent to appellant only months after the alleged date of the offense. It appears that appellant's strategy in doing so was to leave the jury with the impression that M.L. and appellant shared a rather normal father-daughter relationship, one in which she felt secure enough to write him friendly letters while he was away. Appellant may have anticipated that such a relationship would undermine M.L.'s testimony that appellant sexually assaulted her. Evidence that appellant was incarcerated at the time M.L. wrote him letters—that he was in what the State calls a

4

"controlled environment" from which he could not physically reach M.L.—arguably diminishes the impact of appellant's evidence that M.L. continued to correspond with him after the date the offense was alleged to have occurred. On that basis, it makes the existence of a normal father-daughter relationship less probable, and appellant made the father-daughter relationship a fact of consequence by raising the issue of the letter in the first place as a means of undermining M.L.'s credibility. *See* TEX. R. EVID. 401. In other words, by admitting evidence of the letter, appellant cannot now complain that the State emphasized to the jury the details surrounding the letter from M.L. to appellant. *See Sherman*, 20 S.W.3d at 101. The trial court did not abuse its discretion when it concluded that appellant's incarceration was relevant to the issues surrounding M.L.'s letter to appellant. We overrule appellant's contention to the contrary.

Prejudicial Effect v. Probative Value

We now evaluate the probative value of that evidence in light of its prejudicial effect. In effect, appellant now contends that, even if evidence of appellant's incarceration at the time of M.L.'s letter to him *was* relevant, the evidence's prejudicial effect substantially outweighed its probative value.

Indeed, even relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." *See* TEX. R. EVID. 403. When called on to analyze evidence in light of a Rule 403 objection, the trial court must balance the following considerations: (1) the inherent probative force of the proffered evidence along with (2) the proponent's

need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *See Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

Standing alone, perhaps, the probative value of evidence that appellant was incarcerated at the time could be said to have minimal probative value. However, in the context of this trial and in light of the state of the record before the trial court, the fact that appellant was incarcerated when M.L. sent the letter in question is rather valuable in that it provides the jury with a more complete understanding of the facts and circumstances surrounding M.L.'s letter to appellant. Appellant appears to have wanted the jury to consider the fact that M.L. continued to correspond with appellant even after the date of the offense for which he was on trial. That being so, the jury was entitled to consider the totality of the facts and circumstances surrounding M.L.'s letter to appellant. Based on the evidence before it, the trial court could have concluded that, only when armed with the full context surrounding the correspondence, could the jury assign the appropriate weight and value to the fact that M.L. sent appellant the letter.

The probative value of the letter and of the fact that appellant was incarcerated when he received it increases when we consider that the State's evidence consisted primarily of M.L.'s account of the offense. As much as appellant relied on the evidence of the letter to undermine M.L.'s testimony, the State, as proponent of the evidence of

6

appellant's incarceration at the time of the letter, had a pressing need for that evidence to diminish the impact the letter may have had on the State's most critical evidence of the assault. *See id.* at 641. The trial court could have reasonably concluded that the State's need for the evidence weighed in favor of its admission.

We cannot overlook the fact that the evidence revealed to the jury that appellant was incarcerated, at least suggesting that the evidence raised a character issue relating to extraneous offenses. In doing so, there is some tendency of the evidence to distract the jury from the main issue and to suggest decision on an improper basis: appellant's general criminal nature. *See id.* Aware of these considerations and in an effort to guard against such a tendency, the trial court was careful to admonish M.L. not to allude to the nature of the offense for which appellant was incarcerated at the time M.L. wrote and sent the letter; the jury was permitted to consider for a limited purpose only that appellant was incarcerated, nothing concerning the details of the incarceration. The trial court also issued the following specific instruction to the jury regarding its consideration of the evidence that appellant was incarcerated at the time of the letter:

> Ladies and Gentlemen of the Jury, I anticipate here in just a few minutes that – that as a part of this letter, that there will be testimony that will include that this letter was sent to [appellant] in jail. You are in no way to deduce from that that he is guilty of anything in – in regards to this. It is – you can simply use it as evidence that that is where she sent the letter.
>
> You are not to make any assumptions, based upon her sending it to him in jail, that he is guilty of this particular offense. Your – you will make your decisions based solely upon the evidence presented in court. All right.

By this instruction, the trial court clarified the import of the evidence, cautioned the jury against giving that evidence undue weight, and reminded the jury of its duty to properly consider the evidence as it relates to the offense at bar. In other words, the trial court

equipped the jury with the framework and limitation with which it could properly evaluate the probative force of the evidence of appellant's incarceration at the time of the letter. *See id.*

Finally, the record demonstrates that the presentation of the evidence that appellant was incarcerated when M.L. sent him the letter did not "consume an inordinate amount of time" and did not "merely repeat evidence already admitted." *See id.* at 641–42. The trial court could have concluded that these factors weighed in favor of admission of the evidence.

Based on our analysis of the relevant factors, we cannot say that the trial court abused its discretion when it admitted evidence of appellant's incarceration over appellant's Rule 403 objection. We overrule appellant's second and final point of error.

Conclusion

Having overruled both of appellant's points of error, we affirm the trial court's judgment of conviction. *See* TEX. R. APP. P. 43.2(a).


Mackey K. Hancock
Justice


Do not publish.

8